## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### CURRY v. LANDES AND OTHERS.

November 12, 1914.

Absent, Keith, P.

1. FRAUD—*Allegation*—*Burden of Proof.*—The burden is on the plaintiff who alleges bad faith and fraud on the part of the defendant to establish the charges by the clearest and most satisfactory evidence, which has not been done in the case in judgment.

Appeal from a decree of the Circuit Court of Augusta county. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Rudolph Bumgardner* and *Jos. A. Glasgow,* for the appellant.

*Carter Braxton* and *J. M. Perry,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This suit originated in a bill filed by Mrs. G. D. Curry against John A. Landes and his trustee to injoin the sale of one hundred acres of land conveyed by her in trust to secure the payment of a bond for $800, dated February 23, 1910, payable eight months after date, with interest from date, which she had executed to Landes for money borrowed. The prayer of the bill rests upon the allegations that the bond had been paid, and that Landes was largely indebted to the plaintiff.

An outline history of the controversy is as follows: From September, 1904, until September 1, 1910, Landes was employed by Mrs. Curry as manager of her farm in Augusta county at $25.00 per month and some additional perquisites. The parties are not agreed as to how the employment terminated, nor is it material. The plaintiff was represented by her husband, Charles Curry, and her son, Duncan Curry, as agents and attorneys throughout the transaction. On September 8, 1910, Charles Curry wrote Landes that he had wrongfully and fraudulently stripped the farm of property amounting to $1,500, or more, and claimed the right to take away other property. He was notified not to come on the place or remove any other property therefrom, and also that he would be sued for the amount of loss sustained. Says the letter, "You have betrayed every confidence that I imposed in you, and you may prepare yourself to be proceeded against with all the vigor that I can proceed against you." In a post-script, after charging him with taking away pigs and some farming tools, he concludes: "Without any authority to do so, you sold stock from the farm recently and you must return it at once." About one month after the date of that letter Mrs. Curry, by her husband and son as her attorneys, entered into the following agreement of settlement with Landes:

"Memorandum of settlement, made and entered into this 10th day of October, 1910, between Charles and Duncan Curry, attorneys for Grace D. Curry, party of the first part, and John A. Landes, party of the second part, Witnesseth: That whereas the contract entered into between said parties September 21, 1904, has now ceased and is of no effect, said parties therefore contract and agree to settle and compromise their accounts against each other by squaring off said accounts, but said John A. Landes agrees to assume all outstanding accounts and notes contracted during his stay on the farm of said

party of the first part and save her harmless on said accounts, and said party of the first part agrees to give to said John A. Landes a one-third interest in a grey stallion, called Joe, and the spring insurance of 1911, but the party of the second part agrees to assume all the indebtedness on said stallion and all accounts contracted on account of said stallion.

"Said John A. Landes also agrees not to collect the bond he holds on party of the first part's farm at Buffalo Gap for eight hundred dollars ($800.00) until January 15, 1911. Witness our hands the day and year above written.

"CHARLES and DUNCAN CURRY,

"Attys for G. D. Curry.

"JOHN A. LANDES."

Landes refused to consent to the terms of the contract, as originally prepared, and insisted upon the following additions, which were contemporaneously written below the signatures on both drafts of the agreement by Duncan Curry, and with those *addenda* accepted his duplicate of the compact:

"The above terms as to liability don't apply to Fawbus, for both parties deny any and all liability to him.

"C. & D. C., Attys., etc.

"John A. Landes."

*Memoranda*—(Notes and accts. so far as known.)

| | |
|---|---:|
| Fultz & Root, note | $ 46.00 |
| Bowman | 48.00 |
| Corn planter (Carpenter) | 55.00 |
| Eddins | 37.00 |
| Burketown store | 12.00 |
| Spring Hill mill | 7.90 |
| Caves | 3.50 |
| Charlie Root | 3.00 |
| Board | 47.00 |

Interest in horse .......................... $35.00

C. & D. C.

The $800 bond was not paid according to stipulation, and Landes was proceeding to enforce his deed of trust when Mrs. Curry filed her bill to injoin the sale and also for substantive relief.

The bill is prolific in charges of misconduct on the part of Landes in his management of the farm, practically covering the entire period of his stewardship, and involving not only gross breaches of duty and trust but likewise accusations of offenses of a criminal nature. But the material grounds for the relief sought are: That by the contract of October 10, 1910, Landes agreed to pay the whole indebtedness incurred in the management of the farm, amounting to $911.62 in excess of the sum of $294.40, the aggregate amount of notes and accounts specified in the second addendum to the contract (and which had been taken care of by him at the time of the institution of the suit). It is alleged that the additional items of indebtedness had been presented to Landes and that he had agreed to assume and pay them; that he had not complied with his contract in that respect, and the plaintiff had been compelled to pay the excess of $911.62; that Landes also owed the plaintiff one-third of the colt fees for the services of the stallion, Joe, for the season of 1909-10, which fees amounted to about $900; that he was moreover liable for damage to the horses on the farm of the value of $1,500, which were rendered worthless through his neglect, and for $400 worth of corn and $100 worth of hay, and live stock of the value of $500, fraudulently appropriated by him to his own use.

Landes by his answer and deposition in every detail denies these several allegations.

The court referred the case to a master commissioner to ascertain and report whether or not the accounts and

claims asserted in the bill existed, and, if so, constituted credits and setoffs on and against the $800 bond. The findings of the commissioner were adverse to all of the contentions of the plaintiff, and the exceptions to his report were overruled by the court, and the same was ratified and confirmed. The court also dissolved the injunction and retained the case for the enforcement of the defendant's deed of trust.

Without undertaking to go into the details of the evidence, we are warranted in saying that independently of the weight to which the findings of the commissioner are entitled, the decision of the circuit court is plainly right and ought not to be disturbed. Every demand which is made a ground of relief in plaintiff's bill was in existence on October 10, 1910, when the "settlement agreement" was entered into, and was then known to her agents. It is incredible that the astute attorneys who represented Mrs. Curry would either have advised or drafted such an agreement if the allegations of the bill contain a correct statement of the facts existing at that time. Instead of stipulating for the postponement of the collection of the $800 bond, she would have denied liability thereon and demanded its delivery.

The bill not only seeks to reform a written contract, but every demand asserted therein tends to fix upon defendant the imputation of bad faith and fraud. In such case it is well settled that the burden rests upon the plaintiff to establish the charges by the clearest and most satisfactory evidence, and that burden she has not successfully borne. See *Alsop* v. *Catlett,* 97 Va. 364, 34 S. E. 48; *Beach* v. *Bellwood,* 104 Va. 170, 51 S. E. 184; *Wilkinson* v. *Dorsey,* 112 Va. 859, 72 S. E. 676, and cases cited in opinion.

We find no error in the decree appealed from and it must be affirmed.

*Affirmed:*